# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| ARIE D. HILL, § | |
| § | |
| **Plaintiff** § | |
| § | |
| v. § | Civil Action No. 4:10-CV-324-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| **Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated March 14, 2011 (doc. 19), this case has been referred for findings, conclusions, and recommendation on an appeal from the final decision of the Commissioner of Social Security ("Commissioner"). Based on the relevant filings, evidence, and applicable law, the decision should be wholly **AFFIRMED**.

## I. BACKGROUND[1]

### A. Procedural History

Arie D. Hill ("Plaintiff") seeks judicial review of a final decision by the Commissioner denying his claim for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff applied for disability insurance benefits and supplemental security income on April 14, 2006, alleging disability since January 25, 2006, due to diabetes and knee and back problems. (R. at 109, 120, 133-34.) His application was denied initially and upon reconsideration. (R. at 55, 62.) He timely requested a hearing before an Administrative Law Judge ("ALJ") and personally appeared

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "R."

and testified at a hearing held on September 4, 2008. (R. at 67-68, 17-48.) On October 16, 2008, the ALJ issued a decision finding Plaintiff not disabled. (R. at 6-16.) On March 6, 2010, the Appeals Council denied his request for review, and the ALJ's decision became the Commissioner's final decision. (R. at 1-5.) Plaintiff timely appealed the decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on March 12, 1969, and was 39 years old at the time of the hearing before the ALJ. (R. at 21, 109.) He has a high school education and past relevant work as a folding machine operator. (R. at 15, 22, 44-45.)

    **2.     Medical Evidence**

The medical evidence shows that Plaintiff has insulin-dependent diabetes mellitus (R. at 191, 194, 213-14, 241, 265), peripheral neuropathy secondary to his diabetes (R. at 249-50), and generally-controlled hypertension (R. at 236, 246, 249-50). He is obese at six feet in height with a weight between 291 to 336 pounds. (R. at 133, 194, 216, 246, 249-50.)

On June 15, 2006, Gregory Phillips, M.D., performed a consultative internal medicine examination of Plaintiff. (R. at 215-19.) Plaintiff reported increasing fatigue, nausea, weakness, and an inability to keep up the pace at work following his diagnosis of diabetes four years earlier. (R. at 215.) He also reported gradually increasing pain and discomfort in his legs and knees following a leg injury from a motor vehicle accident in 2000. (*Id.*) He stated that he had never had surgery on his knees, but if he stood for more than one or two hours, his knees gave out. (*Id.*) He also stated that he had been bothered by the increasing pain and discomfort in his back although he had no specific injury to the back. (*Id.*) Upon physical examination, Dr. Phillips noted that

Plaintiff's spine was midline, but he had some tenderness to pressure through the sacroiliac region on both sides. (R. at 216.) He was able to flex forward about 45 degree without experiencing any pain and his extremities showed no active joint inflammation or edema. (*Id.*) "There was some stiffness in range of motion through the right knee with only about 75% of normal excursion," but "the other joints seemed to be generally unremarkable without any sign of subluxation, effusion, or deformity." (*Id.*) He did not require the use of an assistive device for ambulation but did require assistance of the examination table to rise from a squatting position. (R. at 216.) A radiograph of the lumbar spine showed mild degenerative changes and a radiograph of the knee was normal. (*Id.*)

Dr. Phillips noted that Plaintiff did not have hypertension, had been diabetic since 2002, weighed 350 pounds when he was diagnosed with diabetes, and had been able to lose about sixty pounds since then. (*Id.*) His impressions were chronic low back pain secondary to mild degenerative changes but without evidence of nerve root irritation or radiculopathy; chronic anthralgias of the right knee without evidence of joint disease; and diabetes melitus type II under good clinical control and without evidence of major end-organ damage. (*Id.*) He found Plaintiff's subjective complaints substantiated by objective data available to him. (R. at 217.) He did not find it surprising that Plaintiff had "some discomfort in weight bearing joints" given his increasing age and the type of work he had done in the past, but especially given his weight four years earlier. (*Id.*) He noted that Plaintiff's x-ray showed some degenerative changes indicating the stress his back had been under as he had gotten older. (*Id.*) Because there was no nerve root irritation or radiculopathy, however, he hoped that further weight loss would minimize any progression of Plaintiff's back problem. (*Id.*) Given the decreased range of motion in Plaintiff's right knee but normal x-rays, he suspected some soft tissue injury and impairment in the right knee. (*Id.*) He explained that Plaintiff's weakness and weight could be secondary to his diabetes and hoped that it would be better

controlled with weight loss. (*Id.*) Based on the objective medical evidence, he concluded that Plaintiff "seem[ed] to be limited in his ability to stand, walk, lift, and carry," but was "not limited in hearing, seeing, speaking, sitting, or handling objects." (*Id.*)

On July 3, 2006, Yvonne Post, DO, a state agency medical consultant, completed a physical residual functional capacity ("RFC") assessment of Plaintiff. (R. at 220-27.) She opined that he could occasionally lift or carry 50 pounds; frequently lift or carry 25 pounds; stand, sit, or walk for a total of about six hours in an eight-hour workday; do unlimited pushing or pulling; and had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 221-24.) She found that Plaintiff had only mild decreased range of motion in his back; no active inflammation, heat, subluxation, effusion, or deformity; and weak toe or heal walking due to balance issues rather than muscle problems. (R. at 221.) She concluded that the limitations allegedly caused by Plaintiff's symptoms were not wholly supported by medical and other evidence. (R. at 227.) On September 9, 2006, Jeanine Kwun, M.D., another state agency medical consultant, confirmed Dr. Post's RFC assessment. (R. at 228.)

In April 2008, Plaintiff visited an emergency room for a cut on his right small finger that had not healed for four months. (R. at 246-47, 249, 257-60.) His sensation and motor function were intact, but he had soft tissue swelling. (*Id.*) He was diagnosed with right small finger granuloma, and it was excised in July 2008. (*Id.*)

### 3. Hearing Testimony

On September 4, 2008, Plaintiff and a vocational expert ("VE") testified at a hearing before the ALJ. (R. at 17-48.) Plaintiff was represented by an attorney. (R. at 17.)

#### *a. Plaintiff's Testimony*

Plaintiff testified that he was six feet tall, single, and right-handed, weighed 340 pounds, and

lived in a one-story duplex apartment. (R. at 21-22.) He graduated from high school and had vocational training in printing. (R. at 22.) He worked for a couple of weeks as a cell-phone tester in October or November of 2007, and for a temporary labor service in March of 2008. (R. at 24.) His work attempts were unsuccessful because of the pain in his hands, feet, and legs. (R. at 25; 41-43.) He developed pain with carpal tunnel syndrome, which was much worse in his left hand and caused it to lock up. (R. at 25; 33-34.) He was in therapy for it but would need surgery if therapy didn't work. (R. at 34.) He took Neurontin for his diabetic nerve pains and Hydrocodone for the pain in his hands and feet; the medication made him drowsy, nauseated, weak, and tired, and caused difficulty with concentrating, focusing, or remembering things. (R. at 25, 30, 39-40.) He blacked out sometimes, went to sleep, woke up, and didn't remember the last thing he did. (R. at 30.) On a typical day, the pain level in his legs, back, and hands was an eight on a ten-point scale even with medication. (R. at 31-32.) He took insulin for his diabetes but the insulin caused him to have urinary frequency and incontinence about two to three times a month. (R. at 30-31.) He tested his blood sugar level regularly; it fluctuated and sometimes went over 200 or 300. (*Id.*)

With respect to his daily activities, Plaintiff testified that he stayed home all day while mostly lying down. (R. at 25-26.) He went to bed between 10:00 and 11:00 p.m., and he got up around 6:00 or 7:00 a.m. (R. at 26.) He slept for a total of two hours at night and had to frequently use the restroom because of his diabetes. (R. at 26, 36.) His lack of sleep at night caused fatigue and caused him to sleep most of the day, but his sleep was fragmented even during the day. (R. at 37.) He spent a few hours every day watching television, and sometimes exercised in his chair when feeling better. (R. at 27.) Sometimes he tried to do some housework, like getting himself something to eat, washing dishes, vacuuming, and mopping, but he did not do laundry or take out the trash. (R. at 26-27.) He bathed and dressed himself and sometimes went grocery-shopping. (R. at 29, 41.)

He sometimes drove to the corner store, but he had last driven a few months earlier because he did not own a car. (R. at 29.) His mother drove him everywhere. (R. at 41.)

As for his functional limitations, Plaintiff testified that he had difficulty reaching, handling, and grasping things; if he squeezed too hard, his hand locked up. (R. 34.) He dropped things sometimes, but could pick up a coin, button his shirt, and pick up a gallon of milk weighing about eight and a half pounds. (*Id.*) If he carried the milk from the back to the front of a store, he would feel pain in his left wrist. (R. at 35.) His hand would lock up if he lifted the milk repetitively. (R. at 36.) He couldn't sit long comfortably and had sharp pain constantly running through his legs because of the diabetic neuropathy. (R. at 37-38.) If he walked a block, his back started hurting. (R. at 39.) He had been following a prescribed diet for his weight, but it was expensive to follow. (R. at 40.) Although he had lost 40 pounds the previous year, he gained most of it back. (*Id.*)

### b. VE's Testimony

The VE testified that Plaintiff had past relevant work as a folding machine operator. (R. at 44-45.) The ALJ asked the VE to opine whether an individual with Plaintiff's age, education and vocational history could perform his past relevant work with the following limitations: lift 20 pounds occasionally; lift and carry no more than 10 pounds frequently; stand and walk about two hours in an eight hour workday; sit about six hours in an eight hour workday; no climbing of scaffolds, ropes or ladders; frequent balancing, kneeling, and crouching; occasional crawling and stooping; frequent reaching, handling, fingering, and feeling bilaterally; no visual or communication limitations; and no work at unprotected heights or around hazardous or exposed moving machinery. (R. at 45.) The VE opined that the hypothetical individual could not perform Plaintiff's past relevant work as actually performed or as traditionally performed in the national economy, but he could perform other jobs in the national or regional economy such as the job of a cashier II (specific vocational

preparation ("SVP") of 2, light, 100,000 jobs in U.S. and 8,000 in Texas), injection molding machine tender (SVP of 2, light, 30,000 jobs in U.S., 2,400 in Texas, and 30,000 in Ashville), and a bench assembler (SVP of 2, light, 50,000 jobs in U.S. and 2,500 in Texas). (R. at 45-46.)

Upon cross-examination by Plaintiff's attorney, the VE testified that the jobs of bench assembler and cashier II would require the most use of both hands, but the other jobs would not require as much bilateral dexterity. (R. at 47.) In a competitive work environment, one to two absences per month would usually be tolerated, but a frequent need to exceed the normal 15 minute breaks or hour-long lunch breaks would not be tolerated. (R. at 46-47.)

**C.  ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on October 16, 2008. (R. at 6-16.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 10.) At step two, he found that Plaintiff had severe impairments of insulin dependent diabetes mellitus, obesity, mild degenerative changes in his lumbosacral spine, a soft tissue injury to the right knee, and diabetic neuropathy in his feet. (*Id.*) At step three, he found that Plaintiff did not have an impairment or a combination of impairments that met or equaled a listed impairment. (*Id.*) He next determined that Plaintiff had the RFC to lift and carry twenty pounds occasionally and less than ten pounds frequently; stand and walk two hours and sit six hours in an eight-hour workday; frequently balance, kneel, crouch, crawl, and stoop; frequently use his bilateral hands and arms to reach, handle, finger, and feel; never climb ladders, ropes, or scaffolds; and never work with hazardous moving machinery and at unprotected heights. (R. at 14.) He found that Plaintiff could not perform his past relevant work but was capable of performing other jobs existing in significant numbers in the national economy. (R. at 14-16.) He concluded that Plaintiff had not been disabled, as defined in the Social Security Act. (R. at 16.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.*

#### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as

defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). The Commissioner utilizes a sequential five-step inquiry to determine whether an adult is disabled and entitled to benefits under the Social Security Act:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is

capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.    Issues for Review**

Plaintiff presents the following statement of issues:

1. The defendant asked the [VE] could the plaintiff could perform his past work as it is customarily performed in the national economy. [The VE] testified he could not do so.

2. Defendant states that the plaintiff must meet certain rules to qualify for disabled Workers social security benefits. Including the required work credits. In addition, Your health problems must prevent any kind of substantial work, and last for 12 months in a row or result in death. The plaintiff has not done any substantial work since 2006. He was diagnosed with diabetes, obesity, and hypertension [since] 2006. These impairments result in millions of deaths each year. Further [Plaintiff] conclude[s] that [he] is disabled under the Act.

(Pl. Br. at 1 (doc. 16)). Plaintiff further states that he was assaulted in June 2010 and presented to the Emergency Room for a head wound that required 20 staples and a broken leg that needed surgery and insertion of a plate and screws. (*Id.* at 1-2.) These two injuries, he argues, are severe impairments. (*Id.* at 2.)

**C.    RFC Finding**

Plaintiff's statement that the VE testified he could not perform his past work is liberally construed as a claim that the ALJ's RFC assessment is not supported by substantial evidence.

Residual functional capacity is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1) (2003). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). An ALJ may consider an individual to have no limitation or restriction with respect to a functional capacity when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction. SSR 96-8p, 1996 WL 374184, at *1. An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id*. An ALJ's decision can be supported by substantial evidence even if the ALJ does not specifically discuss all evidence that supports his decision or all evidence that was rejected. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Substantial evidence exists when there is enough relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *See Leggett*, 67 F.3d at 564. Even if the reviewing court would reach a different conclusion based on the evidence in the record, the court must defer to the ALJ if there is substantial evidence to support his conclusion. *Id.* This standard of review, however, is not simply an uncritical "rubber stamp" and "involves more than a search for evidence supporting the" ALJ's decision; the reviewing court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343.

Here, the ALJ determined that Plaintiff had the RFC to lift and carry 20 pounds occasionally and less than ten pounds frequently; stand and walk two hours and sit six hours in an eight-hour workday; frequently balance, kneel, crouch, crawl, and stoop; frequently use his bilateral hands and arms to reach, handle, finger, and feel; never climb ladders, ropes, or scaffolds; and never work with hazardous moving machinery and at unprotected heights. (R. at 14.) His determination that Plaintiff had limitations, but not to a disabling degree, was based on a thorough analysis of Plaintiff's allegations of disabling hypertension, diabetes, obesity, and pain in light of the evidence before him. (R. at 11-14.)

With respect to Plaintiff's hypertension and diabetes, he found that they were generally controlled. (R. at 11, 14.) This finding was consistent with low blood pressure readings in the record, Dr. Phillips' notation that Plaintiff did not have hypertension and was not on any medication for it, and medical notes indicating that Plaintiff's diabetes was well-controlled. (215-16, 217, 236, 246, 249-50, 259.) While Plaintiff was hospitalized in March 2004 with diabetes ketoacidosis and a blood sugar reading of 500, he admitted to poor medical follow-up and not following a particular diabetic diet, and the medical records after the hospitalization did not indicate any problems with his diabetes. (R. at 191, 194.) Moreover, while Plaintiff testified he experienced constant pain in his feet and the medical record indicated he had peripheral neuropathy secondary to his diabetes (R. at 249-50), the medical record did not indicate that he suffered from intense and constant pain in his feet and legs because of the diabetes. Subjective complaints of pain must be corroborated at least in part by objective medical evidence of record. 42 U.S.C. § 423(d)(5)(A); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)).

As for Plaintiff's obesity and complaints of pain, the ALJ adopted Dr. Phillips's assessment that his obesity was expected to cause some discomfort in his weight-bearing joints and that he had a decreased range of motion in his right knee and lumbar spine. (R. at 11-14.) He found, however, that Plaintiff's allegation of significant back pain were grossly disproportionate to x-ray findings of only mild degenerative changes in his lumbosacral spine, and that the deficits exhibited by Plaintiff were not so significant as to warrant a finding of disability. (R. at 13-14.) He pointed out that Plaintiff generally had a fairly good physical examination, that weight loss would minimize further progression of Plaintiff's back problems, that Plaintiff had been able to lose weight in the past, and that no concomitant impairment prevented Plaintiff from losing weight. (R. at 14.) He further stated that Plaintiff's allegations of carpal tunnel syndrome were not supported by the objective evidence of record. (*Id.*)

More importantly, the ALJ incorporated Plaintiff's objectively supported limitations into his RFC finding. For example, he incorporated Dr. Phillips' opinion that Plaintiff was limited in his ability to stand, walk, lift, and carry, by limiting his RFC to lifting and carrying 20 pounds occasionally and less than ten pounds frequently, and standing and walking two hours in an eight-hour workday. (R. at 14.) Notably, these limitations were more severe than those identified by the state agency medical consultant. (221-24.) Further, despite the lack of evidence suggesting the existence of carpal tunnel syndrome and the state agency medical consultant's opinion that Plaintiff had no manipulative limitations, the ALJ restricted him to frequent instead of constant use of his bilateral hands and arms to reach, handle, finger, and feel. (R. at 14, 221-24.) The ALJ also incorporated Plaintiff's unsupported allegations of medication side-effects by finding that he could never climb ladders, ropes, or scaffolds, and must avoid working with hazardous moving machinery

and at unprotected heights. (R. at 14.)

The ALJ's RFC finding in this case is supported by substantial evidence, and remand is not required on this issue.

**D.      Disability Finding**

Plaintiff's second claim that he is disabled is liberally construed as a claim that the ALJ did not meet his burden at step five to show that Plaintiff was not disabled.

To be considered disabled, a claimant must have a severe impairment that makes him unable to perform his previous work or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a). Work exists in the national economy when there is a significant number of jobs, in one or more occupations, having requirements that a claimant is able to meet with his physical or mental abilities and vocational qualifications. 20 C.F.R. § 404.1566(b). To establish that work exists in the national economy at step five of the sequential disability determination process, the ALJ relies on the medical vocational guidelines or the testimony of a VE in response to a hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A VE in turn relies on the Dictionary of Occupational Titles ("DOT") in order to testify regarding skills needed and availability of specific jobs. It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. 20 C.F.R. § 404.1520(a)(4)(i); *Greenspan*, 38 F.3d at 236. Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).

At the hearing, when the ALJ asked the VE to opine whether a hypothetical individual with

Plaintiff's age, education, experience, and RFC could perform his past relevant work, the VE responded that he could not. (R. at 45.) He opined, however, that such an individual could perform other jobs existing in significant numbers in the national and local economies, e.g., the jobs of a cashier II, injection molding machine tender, bench assembler, and parking lot cashier. (R. at 45-46.) When the ALJ adopted the VE's opinion in reaching his step five finding, he met his burden at step five. Since Plaintiff has failed to meet his burden to rebut the ALJ's step five finding, remand is not required on this issue.

**E.**    **New Evidence**

Finally, Plaintiff's statements that he was injured during an assault in June 2010 (after the ALJ issued his decision and the Appeal Council denied its review) and attached medical evidence reflecting those injuries are liberally construed as a claim that this evidence justifies a remand under 42 U.S.C. § 405(g).

Section 405(g) provides, in pertinent part, that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In other words, remand is appropriate if the additional evidence is new, the evidence is material, and good cause exists for the failure to present the evidence to the Commissioner at the administrative level. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Since the Commissioner essentially concedes that the evidence is new and there is good cause for not presenting the evidence at the administrative level, the pertinent inquiry is whether the evidence is material. New evidence is material if: (1) it relates to the time period for which benefits were denied i.e. it does not concern a later-acquired disability or the subsequent

deterioration of the previously non-disabling condition; and (2) there is a reasonable possibility that this new evidence would change the outcome of the case. *See id*; *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (citations and internal quotation marks omitted).

Here, the new evidence of Plaintiff's June 2010 injuries is not material because it relates to the period after the ALJ's decision and concerns either a later-acquired disability or the subsequent deterioration of a previously non-disabling condition. It is therefore improper to remand based on this new evidence.

### III. CONCLUSION

The final decision of the Commissioner should be wholly **AFFIRMED**.

**SO RECOMMENDED,** on this 18th day of April, 2011.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE